IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| U.S. BANK, N.A., as Trustee for the registered holders of GS Mortgage Securities Corporation II, commercial mortgage pass-through certificates, series 2006-CG8, acting by and through its special servicer CW Capital Asset Management, LLC,<br>        Plaintiff,<br><br>vs.<br><br>IRA GORMAN, et al.,<br>        Defendants. | Civil Action No. 11-612 |

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the motion for summary judgment (ECF No. 29) filed on behalf of Plaintiff U.S. Bank, N.A. be granted.

II. Report

On May 10, 2011, Plaintiff, U.S. Bank, N.A., as Trustee for the registered holders of GS Mortgage Securities Corporation II, commercial mortgage pass-through certificates, series 2006-CG8, acting by and through its special servicer CW Capital Asset Management, LLC, filed a complaint against Defendants, Ira Gorman, an individual, Ira Gorman, as executor of the estate of Dorothy Gorman, and Amy Thogmartin, as Trustee for the Ira Gorman Trust. The complaint alleges that Defendants are liable for amounts owed on a promissory note upon the occurrence of a springing recourse event. Because no responses to the complaint were filed, default and default judgment were entered by the Clerk. However, Gorman moved to set aside the default judgment and filed an answer to the complaint. Default and default judgment still remain against

Thogmartin.

Currently pending before the Court is a motion for summary judgment against Gorman, filed by Plaintiff. Although Gorman was notified that his response to the motion was due by May 31, 2012, no response has been submitted. For the reasons that follow, the motion should be granted.

Facts

Singularity Clark, L.P. (the "Borrower") is a Delaware limited partnership and formerly the owner of real property common known as The Clark Building located at 717 Liberty Avenue, Pittsburgh, Pennsylvania (the "Property"). (ECF No. 29 Ex. 4 Sch. 5.) Gorman is the President of Singularity Clark GP, Inc. ("Clark GP"), the general partner of the Borrower. (Answer ¶ 8.)[1] Singularity Clark Partner, L.P. ("Clark LP") is the limited partner of the Borrower. The Estate is the sole member of Singularity Clark GP, LLC ("Clark LLC"), the general partner of Clark LP. The Estate is also the limited partner of Clark LP. (Answer ¶ 9; ECF No. 29 Ex. 4 Sch. 5.)

The Borrower is obligor on a Promissory Note (the "Note") dated July 7, 2006, by and between the Borrower and Greenwich Capital Financial Products, Inc. ("Original Lender") in the original principal amount of $18,000,000. (Answer ¶ 10; ECF No. 29 Ex. 3.) The Original Lender assigned the Note to Wells Fargo Bank, N.A. ("Wells Fargo") as Trustee for the Trust by allonge[2] (the "First Allonge"). Wells Fargo assigned the Note to Bank of America, N.A. as Trustee for the Trust by allonge (the "Second Allonge"). Bank of America assigned the Note to U.S. Bank as Trustee for the Trust by allonge (the "Third Allonge"). (Answer ¶ 11.)

Additional terms governing the Note are set for the in a Loan Agreement dated as of July

---

[1] ECF No. 25.
[2] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary 88 (9th ed. 2009). In other words, it is a rider.

7, 2006 as assigned from the Original Lender to Wells Fargo by Assignment dated as of June 29, 2006 (the "Wells Fargo Assignment"), as further assigned to Bank of America by that certain Omnibus Assignment by and between Wells Fargo and Bank of America effective as of June 30, 2009 (the "First Omnibus"), and as assigned to U.S. Bank by that certain General Assignment by and between Bank of America and U.S. Bank effective as of April 13, 2011 (the "Second Omnibus" and, together with the Wells Fargo Assignment and the First Omnibus, the "Assignments"). (Compl. Exs. 2, 3; Answer ¶ 13; ECF No. 29.)

The Estate and Gorman (and Amy Thogmartin) guaranteed certain sums due under the Note and Deed of Trust pursuant to the terms of a Guaranty of Recourse Obligations dated as of July 7, 2006 (the "Guaranty" and, collectively with the Note and the Loan Agreement, the "Loan Documents"), as assigned to the Plaintiff by the Assignments. (Compl. ¶ 6; ECF No. 29 Ex. 5.) Plaintiff is the owner, holder and beneficiary of all Loan Documents and related rights. (Compl. ¶ 4; Answer ¶¶ 11-13; Ladejobi Aff. ¶ 4.[3])

Pursuant to Sections 1 and 2 of the Guaranty, Gorman and the Estate are personally liable for the "Guaranteed Obligations," which include the entire debt owed under the Note upon the occurrence of a "Springing Recourse Event." (ECF No. 29 Ex. 5.) Pursuant to Section 10.1 of the Loan Agreement, titled "Exculpation," and notwithstanding anything to the contrary in any of the Loan Documents:

> Lender's agreement not to pursue personal liability of Borrowers as set forth above SHALL BECOME NULL AND VOID and shall be of no further force and effect, and the Debt shall be fully recourse to Borrowers in the event that one or more of the following occurs (each, a "Springing Recourse Event"):
>
> (ii) a breach of the covenants set forth in Section 5.13 hereof…

(ECF No. 29 Ex. 4 at 66.) Section 5.13 of the Loan Agreement, titled "Special Purpose

---

[3] Pl.'s App. Ex. 1 (ECF No. 32).

3

Bankruptcy Remote Entity," provides that:

> Each of Borrower … shall at all times be a Special Purpose Bankruptcy Remote Entity … A "Special Purpose Bankruptcy Remote Entity" shall have the meaning set forth on Schedule 5 hereto.

(ECF No. 29 Ex. 4 at 42.) Schedule 5 of the Loan Agreement, titled "Definition of Special Purpose Bankruptcy Remote Entity," in part states that this term means:

> … a corporation, limited partnership or limited liability company which at all times since its formation and at all times thereafter:
>
> (i) was and will be organized solely for the purpose of (A) owning the Property or (B) acting as general partner of the limited partnership that owns the Property…
>
> (ii) has not engaged and will not engage in any business unrelated to (A) the ownership of the Property, (B) acting as general partner of the limited partnership that owns the Property…
>
> (iii) has not had and will not have any assets other than those related to the Property or its partnership … interest in the limited partnership … that owns the Property…
>
> (xxi) (a) if such entity owns the Property, has and will have no indebtedness other than Permitted Indebtedness…
>
> (xxii) has not and will not assume or guarantee or become obligated for the debts of any other Person or hold out its credit as being available to satisfy the obligations of any other Person except for the Loan…

(ECF No. 29 Ex. 4, Sch. 5.)

On or about April 1, 2009, the Borrower entered into an apartment lease contract ("Lease 1") with landlord BIT Holdings Sixty-Five, Inc. to rent Apartment No. 1701 at 100 7th Street, Pittsburgh, Pennsylvania 15222 for use as a personal residence by Gorman for a term beginning April 1, 2009 and terminating on August 31, 2009. (ECF No. 29 Ex. 6.) Pursuant to Lease 1, the Borrower was obligated to pay $3,325 monthly and to make a $400.00 security deposit to BIT Holdings Sixty-Five, Inc. The Borrower acknowledged Lease 1 and included it on a Verified Counterclaim filed in an action in the Court of Common Pleas of Allegheny County. The

4

verification was signed by Gorman.  (ECF No. 29 Ex. 6, Answer, New Matter and Counterclaim ¶¶ 26-27, 30.)

On or about April 8, 2010, the Borrower entered into a residential lease or month-to-month rental agreement ("Lease 2") with landlords David M. Frisch and Janis M. Frisch to rent 1376 San Ysidro, Beverly Hills, California 90210, for use as a personal residence for Gorman and Amy Reed for a term beginning on May 5, 2010 and terminating on April 30, 2011.  (ECF No. 29 Ex. 7; Tarquinio Aff. ¶ 3.[4])

On or about September 20, 2010, the Borrower entered into a residential lease or month-to-month rental agreement ("Lease 3") with landlords Mark Schwartz and Lisa Redston to rent 2229 San Ysidro Drive, Los Angeles, California, 90210, for use as a personal residence for Gorman and his wife, their two children and two small dogs for a term beginning on November 1, 2010 and terminating on October 31, 2011.  (ECF No. 29 Ex. 8; Tarquinio Aff. ¶ 3.)  Pursuant to Lease 3, the Borrower was obligated to pay $9,400 monthly and to make a $28,200 security deposit to Mark Schwartz and Lisa Redston.

The Note was accelerated by letter dated September 15, 2009.  (ECF No. 29 Ex. 9; Ladejobi Aff. ¶ 6.)  On April 27, 2011, Plaintiff notified the Defendants of their obligations under the Guaranty and made a demand for payment, on the grounds that the Leases constituted "Springing Recourse Events" as defined in the Loan Agreement.  (ECF No. 29 Ex. 10.)  Plaintiff states that, to date, Defendants have not satisfied their obligations under the Guaranty and that the total amount owed on the Note as of May 1, 2012 is $22,321,846.13.  (Ladejobi Aff. ¶¶ 7-8.)

Procedural History

The complaint was filed on May 10, 2011.  Count I alleges breach of contract for

---

[4] ECF No. 29 Ex. 2.

5

collection on the Guaranty. The Defendants were served, but did not file any response to the complaint. Upon motion by Plaintiff, default and default judgment were entered against all Defendants (ECF Nos. 15, 19), but Gorman later accepted service and moved to set aside the default judgment (ECF No. 20). He filed an answer on February 28, 2012 (ECF No. 25). An Initial Rule 16.1 Scheduling Conference was set for March 1, 2012 (ECF No. 27), but Gorman did not appear, nor did he file a motion to reschedule the conference. At that time, a schedule was entered that Plaintiff could file a motion for summary judgment by April 30, 2012 and that Gorman could file a response thereto by May 31, 2012 (ECF No. 28). On April 30, 2012, Plaintiff filed a motion for summary judgment (ECF No. 29), but Gorman has not submitted any response.

Standard of Review

As amended effective December 1, 2010, the Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.  Anderson v. Liberty- Lobby, Inc., 477 U.S. 242, 248 (1986).

Breach of Guaranty

An action seeking recovery under a guaranty is essentially a breach of contract action.  84 Lumber Co., L.P. v. Bryan Constr. Co., 2011 WL 666209, at *8 (W.D. Pa. Feb. 14, 2011) (McVerry, J.); Fabral v. B&B Roofing Co., 773 F. Supp. 2d 539, 552 (E.D. Pa. 2011).  See also Citicorp North America, Inc. v. Thornton, 707 A.2d 536, 538 (Pa. Super. 1998) (a surety agreement is like any other contract).  To state a claim for breach of contract under Pennsylvania law, a plaintiff must show: 1) the existence of a contract, including its essential terms; 2) a breach of the duty imposed by the contract; and 3) resultant damages.  Ware v. Rodale Press, Inc., 322 F.3d 218, 225-26 (3d Cir. 2003) (citation omitted).

Gorman admits the existence and enforceability of all the Loan Documents other than the Guaranty.  (Answer ¶¶ 8-14.)  No explanation is given for the denial of the Guaranty.  However, Plaintiff has provided a complete copy of the Guaranty and attested to it by affidavit.  Thus, the existence of the contracts has been established.

Plaintiff has also established the breach of the Guaranty by virtue of the leases.  With respect to each lease, Gorman asserts that "Clark Building management entered into that lease." (Answer ¶¶ 19-21.)  However, each lease is in the name of the Borrower, "Singularity Clark, LP," and entry into the leases by someone with management authority is not a defense to the claim.

As to Leases 2 and 3, Gorman also asserts that the Clark Building manager entered into them as an agent of the Plaintiff.  (Answer ¶¶ 20-21.)  However, this allegation is not supported by any evidence or detail.  Moreover, the building manager, Mike Tarquinio, has stated in his affidavit that the property manager did not enter into any of these leases on behalf of the

7

Borrower. (Tarquinio Aff. ¶ 6.)

Finally, the damages are not subject to dispute. Plaintiff has proffered evidence of the demand made and that Defendants have not satisfied their obligations under the Guaranty. (ECF No. 29 Ex. 1 ¶ 6; Ex. 10; Ladejobi Aff. ¶ 7.) The total amount owed on the Note is stated by Toks Ladejobi as $22,321,846.13. (Ladejobi Aff. ¶ 8.) Again, Gorman has not responded to the motion for summary judgment and thus provides no basis to dispute the amount of damages claimed. Plaintiff has demonstrated a breach of the Guaranty and the damages it is entitled to recover thereunder.

Plaintiff indicates that the Property was sold to it by credit bid at a Sheriff's sale on April 2, 2012 and states that it will reduce any judgment received in this action by the fair market value of the Property as determined in a proceeding held pursuant to 42 Pa. C.S. § 8103.

For these reasons, it is recommended that the motion for summary judgment filed on behalf of the Plaintiff (ECF No. 29) be granted.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within the time specified in the Notice of Electronic Filing. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: June 7, 2012

cc:	Ira Gorman
	269 S. Beverly Dr. #402
	Beverly Hills, CA 90212